**Y & Y CAB COMPANY, a corporation, Plaintiff in Error,**

v.

**Frances E. SMITH, Defendant in Error.**

No. 36755.

Supreme Court of Oklahoma.

Nov. 8, 1955.

Goodson & White, Oklahoma City, for plaintiff in error.

Kennedy & Kennedy, Oklahoma City, for defendant in error.

HALLEY, Justice.

This action was commenced in the District Court of Oklahoma County by Frances E. Smith against the Y & Y Cab Company to recover damages for personal injuries and property damage resulting from an automobile collision on July 22, 1953, at the intersection of Broadway and Northwest Second Street in Oklahoma City.

We shall refer to the parties as they appeared in the trial court.

Plaintiff alleged that on the date named she was driving her automobile south on the east line of the right-hand side of Broadway towards its intersection with Northwest Second Street, onto which she intended to make a left turn, and stopped until the light turned green, when she started to make a left turn and a cab operated by the defendant struck her with great violence, inflicting bodily injuries and damage to her and her car as hereinafter set out. She alleged that the defendant was guilty of negligence in driving the taxicab at a reckless and dangerous rate of speed under existing circumstances; in failing to keep the cab under proper control so that it could be brought to a stop within the assured clear distance ahead; failed to change the course of the cab or to reduce its speed; violated the law by failing to yield the right-of-way to plaintiff's car which had entered the intersection prior to entrance by the cab.

Plaintiff alleged that by the impact by defendant's cab her car was knocked a distance of 18 feet; that her head was snapped sharply backwards, her spectacles smashed and her entire body wrenched, striking the dashboard with great force; that she suffered intense pain and soreness in the right lower chest region and upper abdomen; that the muscles and soft tissues of her back were traumatized; that she had to have emergency hospital treatment.

That as a result of such accident she was rendered extremely nervous, suffered pains and contusions about her entire body, compelling her to take drugs and sedatives to ease her pain and induce sleep; that her right 10th rib was fractured; that she was confined to her bed for ten days, being fitted by her physician with a supportive rib binder, which she was forced to wear to the present time; that the pain in her abdomen and chest has caused her nausea and loss of appetite, and that she suffers pain on breathing, and that prior to the accident she was 39 years of age, strong and healthy, employed as a nurse at $235 monthly, but lost $115 in wages while un-

able to work; that she incurred medical expenses on account of her injuries for the total sum of $241.54. For physical, mental pain and suffering, loss of time and medical expense, she prayed for damages in the sum of $6,056.54, and for damages to her car in the sum of $185.89.

The defendant answered and denied negligence on its part, and alleged contributory negligence on the part of plaintiff as the cause of her injuries.

The case was tried to a jury and on May 20, 1954, the jury returned a unanimous verdict for the plaintiff for $3,241.54, on her first cause of action and $185.89, on her second cause of action. The court advised the parties that the judgment was excessive and suggested a remittitur in the sum of $800, which was duly filed and judgment for $2,627.43 was entered. Motion for a new trial was overruled and the defendant has appealed.

Defendant contends that the judgment as entered is excessive; that the court erred in admitting testimony to the effect that plaintiff was still suffering from "cervical radiculitis", or the impingement of the nerve at the base of the neck, and trauma because such injury was not specifically plead and defendant filed a motion requiring plaintiff to make her petition more definite and certain in this respect.

In regard to the last contention we find that defendant filed such a motion November 12, 1953, but we do not find where such motion was ever passed upon by the court or that it was ever called to the attention of the court. We do find that on May 20, 1954, during the trial, the court granted both the plaintiff and defendant leave to amend petition and answer by interlineation with the note, "done in open court", but there is no showing in what respect, if any, the amendments were made.

The defendant cites the case of Brown v. McNair, 125 Okl. 144, 256 P. 903. In that case the plaintiff and her physician both testified without objections that in an automobile accident the plaintiff had suffered injuries to certain internal organs which gave her excessive pain, whereas they had been normal prior to the accident.

At the close of this testimony, the defendant moved that it be stricken because the pleadings did not allege the particular injuries mentioned. This Court affirmed the judgment rendered for the plaintiff because the evidence had been admitted without objections and we do not consider this case in point under the facts before us here.

Here the plaintiff and her physician had both testified in regard to the nerve impingement at the base of plaintiff's neck without objection. In Brown v. McNair, supra, it was also urged that the verdict was excessive. The Court announced the rule as to excessive verdicts in the third paragraph of the syllabus as follows:

"This court will not modify a judgment in an action for damage, where it is sustained by sufficient evidence, on the ground it is excessive, unless it appears either to have been tendered through passion or prejudice, by reason of the amount of the verdict or otherwise."

The defendant did demur at the close of plaintiff's evidence but only on the ground that plaintiff's evidence failed to show negligence upon the part of the defendant, but did show negligence upon the part of plaintiff. Under the ruling in Brown v. McNair, supra, we think the court properly admitted the testimony of the plaintiff and her physician as to the injuries at the base of her neck under the general allegations above mentioned.

It is contended that the verdict is excessive, based upon the testimony of plaintiff and her physician. He was the only expert witness. He stated that most of plaintiff's medical expense was incurred within two months after she was injured, but that extra treatments had been given as late as April, 1954, and treatments of her back and neck were made as late as March and April, 1954; that her broken rib had healed normally. As to whether her pain at the base of her neck was permanent or temporary in character, he testified, "I think it is probably temporary. I hope so."

He further testified that the condition "cervical radiculitis" or an irritation of the nerve at the base of the neck, "are very

prone to be recurrent and for that reason I think she will very likely need treatment in the future but I don't think she needs treatment now." This was some ten months after her injuries occurred. He also said:

"I think probably six months or so, another six months or so ought to see her pretty well out of it."

When asked whether he knew if plaintiff would need further medical treatment, he answered:

"That is to some extent speculative. My experience tells me that she will need some. How much, I don't know. It could be a lot or it might be a lot or it might be very little."

■ He stated that he did not think the plaintiff was malingering; that the neck complaint increased as her broken rib improved; that she had no definite appointment at that time, but was to come back for future treatment if she has more trouble; that her present complaints are due to the accident, and that her injuries over the past months have affected her ability to work as a nurse and to do her housework.

We note that it was agreed at the pretrial conference that a physician selected by the defendant might examine the plaintiff. If he made such examination, he was not called as a witness. A careful examination of all of the evidence convinces us that there is ample competent evidence to sustain a verdict for the plaintiff. The testimony of the plaintiff as to the negligence of the driver of defendant's cab in excessive speed and failure to keep a proper lookout ahead is supported by the testimony of a disinterested witness who saw the collision from across the street. The taxi driver died before the trial, but defendant had taken a deposition, a part of which was read in evidence. It is in conflict with some of plaintiff's testimony, but the jury had the exclusive right to determine who was guilty of negligence and the amount of damages suffered by the plaintiff and the jury found in favor of the plaintiff. Henshaw v. Brunson, 137 Okl. 180, 278 P. 645.

■■ The jury had a right to consider the pain that an injured person may suffer in the future, if it is shown that future suffering is reasonably certain. We think that the testimony of her physician, above mentioned, is sufficient to warrant a consideration of this question by the jury.

■ In considering whether a verdict is excessive this Court has held that we should consider the devaluation of the dollar. Jones v. Eppler, Okl., 266 P.2d 451.

Defendant presents the rather unusual theory that the jury rendered an excessive verdict because of its sympathy for plaintiff which must have been aroused because the trial court often admonished attorneys in regard to leading and improper questions and advised the plaintiff that her answers should be responsive only to the questions asked. We find no merit in this contention. It was the duty of the trial court to conduct the trial according to well established rules of law.

In Yellow Cab Operating Co. v. Spelce, 177 Okl. 571, 61 P.2d 672, it is announced that "There can be no absolute standard to measure damages for personal injuries, and a wide latitude of discretion is necessarily left to the good sense and discretion of the jury which fixes the award."

In the case of Denco Bus Lines, Inc., v. Hargis, 204 Okl. 339, 229 P.2d 560, 563, this Court quoted from Bucktrot v. Partridge, 130 Okl. 122, 265 P. 768, as follows:

"'In a suit for damages for personal injuries, before a verdict of the jury will be set aside as excessive, it must appear that the verdict is so excessive as to strike mankind, at first blush, as being beyond all measure unreasonable and outrageous and such as manifestly shows the jury to have been actuated by passion, partiality, prejudice, or corruption.'"

Again in Public Service Co. of Oklahoma v. Hawkins, 194 Okl. 272, 149 P.2d 783, 789, this Court quoted from Producers' & Refiners' Corporation v. Castile, 89 Okl. 261, 214 P. 121:

"'* * * we have no right to place limitations upon the amount returned by the jury unless we are convinced that the amount of recovery bears no relation whatever to the evidence or

that it was induced by bias or prejudice on the part of the jury.' "

We cannot say that the amount awarded the plaintiff by the jury with the reduction required by the remittitur above noted is so excessive as to shock the conscience or to show that the jury was actuated by passion, bias or prejudice. The judgment is affirmed.

It appears that defendant did on December 22, 1954, execute and file herein a supersedeas bond which is incorporated in the case-made, R. Q. Blakeney, Jr., as surety, and plaintiff has prayed for judgment against said surety upon affirmance of the judgment rendered herein.

It is therefore ordered and decreed by this Court that the plaintiff Frances E. Smith, defendant in error, recover from R. Q. Blakeney, Jr., as surety upon said bond the sum of $2,627.43, with interest thereon at the rate of six per cent per annum, from October 4, 1954, until paid, and costs, for all of which let execution issue.

JOHNSON, C. J., WILLIAMS, V. C. J., and WELCH, CORN, DAVISON, JACKSON and HUNT, JJ., concur.